IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| C&R CAULKING, LLC, | * |
| Plaintiff, | * |
| v. | * |
| BANK OF AMERICA, N.A., *et al.*, | *    CIVIL NO. JKB-21-0499 |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

This case arises from the prior business relationship between Plaintiff/Counter Defendant C&R Caulking, LLC ("C&R") and Defendant/Cross Defendant Milton Ronaldo Ochoa Lucero ("Ochoa"). Many of the disputes arising from this relationship involve funds related to C&R's business that are held in two accounts with Defendant/Counter Plaintiff/Cross Plaintiff Bank of America, N.A. ("BANA"). Currently pending before the Court is C&R's Motion to Dismiss BANA's counterclaim for interpleader for failure to state a claim (ECF No. 22), along with Ochoa's Motion to Dismiss the Amended Complaint for failure to state a claim (ECF No. 24). Both motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, an Order will issue granting C&R's Motion to Dismiss and granting in part and denying in part Ochoa's Motion to Dismiss.

### I. *Factual and Procedural Background*[1]

Up until December 30, 2020, Ochoa was an employee at C&R, which at the time had "offered [him] non-ownership dividend compensation of 33% of C&R's profit yearly profit

---

[1] The facts in this section are taken from the Amended Complaint, and to the extent relevant to the interpleader claim, BANA's Answer; they are construed in the light most favorable to the relevant plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

[sic]." (Am. Compl. ¶¶ 8–9, ECF No. 15.) This offer allegedly went unrealized, however, because C&R terminated Ochoa on December 30, 2020 for breach of his employment contract and corresponding fiduciary duties. (*Id.*) Contemporaneous with Ochoa's termination, C&R allegedly executed an "Authorization for Opening and Maintaining Banking Relationship" form with a BANA branch in Howard County, Maryland. (*Id.* ¶ 10.) This form listed only C&R's current owners—Jaime Moran and Roberto Zelaya—as persons authorized to access C&R's bank account. (*Id.* ¶ 9.) This form applied to a C&R operating account maintained with BANA and containing approximately $95,000. (Am. Compl. ¶¶ 10–11.)

On January 1, 2021, despite lacking authorization, Ochoa allegedly withdrew all $95,000 from the C&R account using a self-addressed check. (Am. Compl. ¶ 11.) In response, C&R opened a claim with BANA (*id.* ¶ 12), which appears to have resulted in return of the $95,000 to C&R's account. (*Id.* ¶ 39 n.2.) Those funds, however, remain inaccessible to C&R due to a BANA-imposed hold on the account. (*Id.*)

On January 10, 2021, C&R opened a second, separate BANA account in which it deposited an additional $115,000. (*Id.* ¶ 13.) Without explanation, BANA allegedly froze this second account, precluding C&R from accessing the $115,000 by any means. (*Id.* ¶ 14.) C&R allegedly notified BANA that the freeze on this second account would cause financial hardship by preventing C&R from paying employees and fulfilling contracts, but BANA has allegedly continued to deny C&R access to the funds in this account. (*Id.* ¶¶ 18–19.)

C&R also alleges that on February 10, 2021, Ochoa "sent an invoice to C&R's client with C&R letter [sic] Advanced Architectural Metals, LLC, and falsely claimed that C&R was his company." (*Id.* ¶ 26.) Based on this misrepresentation, Ochoa allegedly collected a payment of $3,761 owed to C&R by Advanced Architectural Metals, LLC ("AAM"). (*Id.*) Additionally,

2

C&R alleges that Ochoa's intervention with AAM caused C&R to lose "supplies and labor that C&R invested in the project, which exceeded the sum of $1,134." (*Id.* ¶ 27.)

C&R initially filed suit in the Circuit Court for Howard County, Maryland, naming only BANA as a defendant. (*See* Compl., ECF No. 4.) After BANA removed the Complaint to federal court based on diversity of citizenship (*see* Not. Removal ¶ 11, ECF No. 1), C&R amended its Complaint to include Ochoa as a defendant and bring additional claims. (*See* Am. Compl.) Along with its Answer, BANA brought a counterclaim and crossclaim against C&R and Ochoa, respectively, seeking to interplead the funds held in both of C&R's BANA accounts. (*See* Counterclaim, ECF No. 21 at 14; Crossclaim, ECF No. 21 at 18.)

## II.  *Legal Standard*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-plead allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

3

## III. Analysis[2]

Hidden beneath the cross-cutting motions, multiplicative claims, and a putative interpleader is a straightforward tort case. As explained below, BANA's claim for interpleader, and many counts in C&R's Complaint, do not plead claims that survive the pending 12(b)(6) motions and will be dismissed.

### A. C&R's Motion to Dismiss BANA's Interpleader Claim

At this stage, BANA seeks, through interpleader, to deposit the $200,843.07 (the "Funds") it holds across C&R's accounts into the Registry of the Court and to obviate any further liability it may have with respect to the Funds. (Counterclaim ¶¶ 7, 16.) C&R has moved to dismiss BANA's counterclaim for interpleader, arguing that the ostensibly competing claims by C&R and Ochoa to the Funds are inappropriate for resolution by interpleader. (*See* Mot. Dismiss Interpleader, ECF No. 22.)

BANA's claim for interpleader is brought under Federal Rule of Civil Procedure 22, which provides that "[p]ersons with claims that may expose a [party] to double or multiple liability may be joined as defendants and required to interplead." *See* Fed. R. Civ. P. 22(a)(1), 22(b) (permitting a defendant to seek interpleader by crossclaim or counterclaim). Interpleader addresses "[t]he classic circumstance . . . where one party, a 'stakeholder' has money or other property that is claimed, or may be claimed by two or more other parties, the 'claimants,' creating a risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property." *AmGuard Ins. Co. v. SG Patel and Sons II LLC*, __ F.3d __,

---

[2] C&R's Amended Complaint also ostensibly seeks a preliminary injunction requiring the immediate release and return of funds held by BANA. (*See* Am. Compl. ¶¶ 84–88.) C&R has not, however, filed an independent motion seeking this preliminary injunction, nor do any of the pleadings establish that a preliminary injunction would be appropriate under the factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer from irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

2021 WL 2303045, at *4 (4th Cir. June 7, 2021). When assessing the propriety of an interpleader action, a court considers whether: "(1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader." *AmGUARD Ins. Co. v. Ortiz*, Civ. No. CCB-18-3885, 2020 WL 3971743, at *2 (D. Md. July 14, 2020).

Here, BANA's putative interpleader fails because there are not adverse claimants to the Funds, and BANA is not threatened with multiple liability. *See Walker v. Liberty Mut. Ins. Co.*, Civ. No. RBH-16-1388, 2017 WL 10208884, at *3 (D.S.C. Mar. 16, 2017). With respect to adversity, there are no allegations that Ochoa has an interest in the Funds beyond the $95,000 contained in C&R's original BANA account. (*See* Crossclaim ¶ 10.) Although Ochoa allegedly withdrew those $95,000 from this *first* account, neither C&R nor BANA has alleged that Ochoa has or may assert a claim with respect to the money held in C&R's *second* BANA account. Therefore, interpleader is inappropriate with respect to funds held in the BANA account that C&R opened in January 2021. (Am. Compl. ¶ 13); *see also* 5 ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1705 (3d ed. 2021) ("A prerequisite for permitting interpleader is that two or more claimants are 'adverse' to each other. This requirement is not met when . . . the claims are not asserted against the same fund.").

Moreover, nothing in the pleadings establishes that BANA may be subjected to multiple liability based on C&R and Ochoa's competing claims to the $95,000 in the first BANA account. Ochoa's claim to that money is allegedly either fraudulent (Am. Compl. ¶ 36), or derivative of sums owed to him by C&R based on his prior employment relationship. (*See* Reply in Support of Mot. Dismiss Am. Compl. ("Ochoa Reply") at 4, ECF No. 33; *see also* Counterclaim ¶ 10

(alleging that Ochoa represented the $95,000 represented proceeds from a job he completed for C&R).)[3] In either case, there is no "risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property," as is required for a proper interpleader. *SG Patel*, 2021 WL 2303045, at *4. Either the $95,000 belongs entirely to C&R, or some portion of it is owed to Ochoa by C&R as compensation. In the latter case, Ochoa is owed money by C&R, but this money does not entitle him to any part of the $95,000 in a way that would be duplicative of C&R's own claim to the Funds.

In other words, Ochoa's unliquidated claim is not against BANA or the Funds, but against C&R. Due to this, the $95,000 could not be owed to both C&R and Ochoa simultaneously in any plausible factual scenario. *Cf. Ortiz*, 2020 WL 3971743, at *2 (finding interpleader was proper where "AmGUARD is threatened with multiple liability, as the existing and proposed claims against AmGUARD's insureds seek damages exceeding the $1 million-dollar policy limit."). Therefore, BANA is not at risk of inconsistent claims or judgments against the $95,000, and interpleader is also improper with respect to that portion of the Funds. *See* Fed. R. Civ. P. 22(a) (requiring "claims that may expose a plaintiff to double or multiple liability" as a predicate for interpleader).

---

[3] In support of this argument, Ochoa attaches to his reply C&R's schedule K-1 form for 2019, in which he is listed as a shareholder. He argues that this K-1 form can be considered at the motion to dismiss stage because it is integral to the allegations in C&R's Complaint. (*See* ECF No. 33-1 at 1.) However, as his brief notes, "[a]n integral document is a document that by its very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." (Ochoa Reply at 4 n.3 (emphasis in original) (quoting *Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011).) The schedule K-1 form lacks two of the necessary attributes to be deemed integral to C&R's Complaint.

First, its value derives from the information it contains—Ochoa's listing as a shareholder in C&R—rather than the mere existence of a K-1 form. Second, the K-1 form does not "give rise to the legal rights asserted" in this action, but rather sets up a plausible defense to Ochoa's alleged conversion of funds in C&R's BANA account. In short, while the K-1 form may be an important piece of information at a later stage in this litigation, the Court's consideration of this evidence at the motion to dismiss stage would be inappropriate.

### B. *Ochoa's Motion to Dismiss the Amended Complaint*

The Court now turns to Ochoa's Motion to Dismiss all the counts in the Amended Complaint that name him as a defendant. Because BANA has not moved to dismiss the Amended Complaint, the Court will consider only the counts that C&R has brought against Ochoa, namely: conversion (Count I); breach of contract (Count IV); tortious interference inducing a breach of contract (Count VI); malicious or willful interference with economic relationships (Count VII), and breach of fiduciary duty (Count VIII).

### *1. Conversion*

C&R's first claim against Ochoa asserts that he converted both the $95,000 he allegedly withdrew from C&R's BANA account and the $3,761 he allegedly obtained from AAM under false pretenses. (*See* Am. Compl. ¶¶ 38, 40.) Under Maryland law, "a conversion is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (internal citation and quotation marks omitted). Ochoa argues that both of C&R's alleged claims are subject to "the general rule [ ] that monies are intangible and, therefore, not subject to a claim for conversion," which grows out of "[t]he original common law rule [ ] that a claim for conversion could not be sought unless the plaintiff's property was tangible." *Id.* at 964, 966.

This rule is, however, subject to "an exception . . . when a plaintiff is able to specifically allege that the defendant converted certain segregated or identifiable funds." *Id.* at 967. To qualify for this exception, funds must be identifiable not only at the time of the alleged conversion but remain that way during the time the defendant possesses the converted funds. If instead, "a defendant retains possession of the funds and commingles them with other monies, [ ] the money 'loses its specific identity and may no longer be the subject of a conversion action.'"

7

*Hobbs v. St. Martin*, 198 F. Supp. 3d 530, 538 (D. Md. 2016) (quoting *Gibbons v. Bank of Am. Corp.*, Civ. No. JFM-08-3511, 2012 WL 94569, at *9 (D. Md. Jan. 11, 2012)). In such cases, "it is not feasible to segregate and restore the plaintiff's currency; nor is it necessary, since money is fungible and since many actions exist at both law and equity to compensate persons who have been deprived of their property." *Id.*

Here, C&R does not allege that the $3,761 Ochoa diverted from AAM remains in a form that would subject it to a claim for conversion. (*See* Am. Compl. ¶ 26.) Without this predicate, C&R's allegations that Ochoa misled AAM to obtain for himself money that was owed to C&R does not sound in conversion. *See Nash v. Montgomery Cnty., Md.*, Civ. No. GJH-20-1138, 2021 WL 1222874, at *8 (D. Md. Mar. 31, 2021) (collecting cases) ("Essentially, courts applying Maryland law have distinguished between claims seeking return of the actual, identical money [which sound in conversion], and those seeking a specific amount of money [which do not]."). Therefore, absent an allegation that these exact funds remain separately identifiable, "the conversion tort is simply a poor fit for Plaintiff's case." *Hobbs*, 198 F. Supp. 3d at 539; *see also Diane Sales, Inc. v. Am. Express Centurion Bank*, Civ. No. GLR-14-1063, 2014 WL 11429026, at *2 (D. Md. July 14, 2014) ("Although [the plaintiff] has identified specific funds it alleges were debited without authorization, it does not allege that [the defendant] has maintained these funds in a segregated account. Without this factual allegation, the Court cannot reasonably infer [that the defendant] is liable for conversion.").

The same may not be said for the $95,000 Ochoa allegedly withdrew from C&R's first BANA account. That $95,000 was allegedly returned to the BANA account following C&R's complaint about Ochoa's unauthorized withdrawal. (*See* Am. Compl. ¶ 39 n.2; *see also* BANA Answer ¶ 39, ECF No. 21.) Therefore, the money remains a separate, discrete fund potentially

8

subject to a claim for conversion because C&R can "describe the funds with such reasonable certainty that the jury may know what money is meant." *Roman v. Sage Title Grp., LLC*, 146 A.3d 479, 616 (Md. Ct. Spec. App. 2016) (quoting *Jasen*, 731 A.2d at 957). Because the $95,000 remains an amount that was allegedly "wrongfully obtained or retained or diverted in an identifiable transaction," it falls within the exceptional case where a "plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Jasen*, 731 A.2d at 966.

Ochoa argues that the $95,000 is not subject to a claim for conversion because it was commingled with "funds rightly due to Mr. Ochoa . . . [who] was and is entitled to 33% of C&R Caulking's profits." (Mot. Dismiss Am. Compl. Mem. Supp. at 6.) This argument, however, contradicts the facts in C&R's Amended Complaint, which for purposes of the present motion must be presumed to be true. (Am. Compl. ¶ 8; *see also* Opp'n Mot. Dismiss Am. Compl. at 4, ECF No. 30.) Because the Amended Complaint denies that Ochoa had any entitlement to the $95,000, Ochoa's commingling argument fails at this stage and C&R's conversion claim remains viable. Accordingly, Count I survives dismissal with respect to Ochoa's alleged conversion of the $95,000, but fails to state a claim with respect to Ochoa's allegedly fraudulent procurement of $3,761 from AAM.

### 2. *Breach of Contract*

Count IV of C&R's Amended Complaint alleges the breach of two independent contracts by BANA and Ochoa. (*See* Am. Compl. ¶¶ 57, 60.) With respect to the latter, C&R alleges that "Ochoa [ ] breached his employment contract with C&R by converting funds belonging to C&R without legal justification or excuse, and by exceeding the scope of the revenue that he was entitled to, and instead wrongfully appropriating $95,000.00." (*Id.* ¶ 60.)

In order to plead a claim for breach of contract, a plaintiff "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by [the] defendant." *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 440 (Md. 2010) (emphasis in original) (internal quotation marks and citation omitted). Here, C&R affirmatively pleads that (1) Ochoa's employment contract was terminated on December 30, 2020; and (2) Ochoa's alleged breach of that contract was his withdrawal of the $95,000—which occurred the next day. (Am. Compl ¶¶ 9, 11, 60.) These pleadings establish a clear temporal disjunction between Ochoa's alleged contractual obligation and his alleged breach, which necessarily fails to state a claim for breach of contract. *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 417 (Md. 2012) (affirming dismissal of complaint where "the contractual relationships ended prior to [alleged breach and] there was no continuing duty, implied or otherwise, for [defendants] to perform obligations under the contract.").

Rather than defend these pleadings on their face, C&R instead argues that "[t]he full extent of Ochoa's actions [constituting breach of contract] is something the Plaintiff is entitled to ascertain through discovery." (Opp'n Mot. Dismiss Am. Compl. at 5.) However, other than a single conclusory allegation in the Amended Complaint (*see* Am. Compl. ¶ 8), there are no allegations that corroborate any breach of contract contemporaneous with Ochoa's employment with C&R. Further, that one allegation asserts that "Ochoa was fired and terminated for cause from C&R . . . because C&R uncovered that Ochoa was breaching his fiduciary duty and employment contract." (*Id.*) Given this, C&R should at least be able to identify the specific breach (or breaches) of contract whose discovery led to Ochoa's termination. (*Id.* ¶ 9.) Having failed to do so, C&R has not alleged any breaches of contract by Ochoa that are sufficiently plausible to survive the motion to dismiss. The "pleading rules do not unlock the doors of

10

discovery for a plaintiff armed with nothing more than conclusions." *Jarvis v. Staples, Inc.*, Civ. No. PJM-10-0244, 2010 WL 4942010, at *2 (D. Md. Nov. 30, 2010) (internal quotation marks and citation omitted).

### *3. Tortious Interference*

Counts VI and VII of the Amended Complaint assert, in turn, claims for "tortious interference inducing a breach of contract" and "malicious or wrongfull [sic] interference with economic relationships." (Am. Compl. at 16.) As a preliminary matter, these claims are redundant because, under Maryland law, tortious interference comprises a "single tort that encompasses not only that form of tortious interference with a contract exemplified by wrongful inducement of a breach of contract, but also the broader form that encompasses other sorts of wrongful interference with contractual relations." *Lake Shore Invs. v. Rite Aid Corp.*, 509 A.2d 727, 732 (Md. Ct. Spec. App. 1986). These "two general manifestations" of tortious interference are mutually exclusive, being "committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract *or*, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994) (emphasis added).

C&R alleges that Ochoa interfered with an existing contractual relationship between itself and AAM. (Am. Compl. ¶¶ 40, 69.) Therefore, to successfully plead a claim, C&R must establish five elements: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991). Further, because C&R's claim of tortious interference "sounds in fraud," it is subject to Federal Rule of Civil

11

Procedure 9(b), *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008), which provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

C&R fails to adequately state a claim because it does not allege the contractual interference associated with Ochoa's fraud with sufficient specificity. While C&R asserts the legal conclusion that "Ochoa induced the breach of an existing contract between C&R and client [AAM]," (Am. Compl. ¶ 69), C&R fails to explain the nature of this contractual breach. All that can be gleaned from the pleadings is that Ochoa allegedly defrauded AAM of a payment of $3,761 owed to C&R. (*Id.* ¶ 41.) C&R offers no explanation as to how this misdirected payment was itself a breach of contract, or precipitated a subsequent breach of C&R's contract with AAM. Further, a claim of tortious interference requires a "breach of [ ] contract *by the third party*." *Fowler*, 698 A.2d at 802 (emphasis added). Absent further factual allegations, the Court does not see how Ochoa's misconduct could have induced AAM, an allegedly defrauded and otherwise innocent actor, to breach its contract with C&R.

C&R argues that its failure to explain this alleged breach is of no moment, because "Maryland law does not require proof of a contract breach. An action [for tortious interference] may lie when there has been a wrongful interference with contractual rights or expectations, even if there is no breach." (Opp'n Mot. Dismiss Am. Compl. at 6 (quoting *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 890 (4th Cir. 1992)) (internal quotation marks omitted).) Some Maryland cases do suggest this more expansive view, finding tortious interference where a plaintiff alleges "[i]nterference with the third party's performance [ ] by prevention of performance" or by "causing a party to cancel a contract . . . even if there is no breach of the contract." *Lake Shore Invs.*, 509 A.2d at 732. The Amended Complaint does not, however,

12

allege any sort of contractual interference—including interference that falls short of a breach of contract. It in fact alleges (albeit in a conclusory manner) that a breach of contract *occurred*, and that Ochoa's conduct "cause[d] both confusion among C&R's clients as well as immediate pecuniary losses to C&R." (Am. Compl. ¶¶ 69, 72.). As explained above, the first of these allegations is unduly conclusory and the second fails to establish that Ochoa "intentionally or wrongfully hinder[ed] contract performance," even under the broad reading of that phrase given by Maryland law. *Cf. Lake Shore Invs.*, 509 A.2d at 729 (providing, as an example of a tortious interference without breach, the termination of an at-will employment contract that would have continued but for the defendant's interference).

In sum, the pleadings in the Amended Complaint are too threadbare to establish that Ochoa's alleged defrauding of AAM interfered with the contract between AAM and C&R. Counts VI and VII will be dismissed.

### *4. Breach of Fiduciary Duty*

C&R's final claim against Ochoa alleges that he "breached all of his fiduciary duties by wrongfully appropriating $95,000.00 from C&R, and by sending fraudulent invoices to C&R's customers to wrongfully appropriate C&R's revenue from its contracts." (Am. Compl. ¶ 74.) In Maryland, "'there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries.'" *Plank v. Cherneski*, 231 A.3d 436, 452 (Md. 2020) (quoting *Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997)). While this "does not mean that there is no claim or cause of action available for breach of fiduciary duty," it does mean that "identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion." *Kann*, 690 A.2d at 521.

13

Under Maryland law, in addition to merely alleging a breach of fiduciary duty, a plaintiff must establish "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank*, 231 A.3d at 466 (internal quotation marks and citation omitted). Because this tort is not one-size-fits-all, these elements must be pled with enough specificity to allow a court to determine the contours of both the relevant fiduciary relationship and the associated breach. *See Kann*, 690 A.2d at 521 ("Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.").

Here, C&R's claim that Ochoa allegedly breached his fiduciary duties as an employee suffers from the same temporal deficiencies as C&R's allegations that Ochoa breached his employment contract. Certain fiduciary duties may persist beyond the termination of an employer-employee relationship. *See, e.g., Operations Rsch., Inc. v. Davidson & Talbird, Inc.*, 217 A.2d 375, 385 (Md. 1966) (finding an ongoing duty not to misappropriate trade secrets). However, the duties of loyalty identified by C&R in its Amended Complaint do not. *See Weichert Co. of Md., Inc. v. Faust*, 19 A.3d 393, 400 (Md. 2011) (emphasis added) ("[T]he duty of loyalty . . . requires that an employee act solely for the benefit of his employer in all matters *within the scope of employment*."). Absent a more precise specification of the duties owed, and breached, by Ochoa when he allegedly misappropriated C&R's funds at BANA and from AAM, C&R's claim for breach of fiduciary duty is not adequately pled.

To summarize, C&R's Amended Complaint alleges four counts, but fails to provide sufficiently precise factual allegations for all but one to survive Ochoa's Motion to Dismiss. Only C&R's claim that Ochoa converted the $95,000 held in its first BANA account is

14

adequately plead in the Amended Complaint. However, the dismissal of BANA's claim for interpleader with respect to the Funds leaves C&R's claims against BANA intact, as those claims' substantive sufficiency has not yet been tested by a dispositive motion.

### *IV. Conclusion*

For the foregoing reasons, an Order will issue granting C&R's Motion to Dismiss BANA's counterclaim for interpleader (ECF No. 22) and granting in part and denying in part Ochoa's Motion to Dismiss C&R's Amended Complaint (ECF No. 24).

DATED this __28__ day of June, 2021.

BY THE COURT:

_____
James K. Bredar
Chief Judge