IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

C&R CAULKING, LLC,              *

    Plaintiff,                  *

v.                              *

                                                                     CIVIL NO. JKB-21-0499

MILTON RONALDO OCHOA LUCERO,   *

    Defendant.                  *

   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

This case arises from various disputes related to Defendant/Counter-Plaintiff Milton Ochoa Lucero's ("Ochoa") relationship with Plaintiff/Counter-Defendant C&R Caulking, LLC ("C&R"), and two of its owners, Counter-Defendants Jaime Moran and Roberto A. Zelaya (collectively with C&R "Counter-Defendants").[1] Currently pending before the Court is Counter-Defendants' Motion to Dismiss Milton Ochoa's Counterclaims. (ECF No. 43). The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, an Order shall issue granting in part and denying in part Counter-Defendants' Motion.

---

[1] Ochoa's Answer styles his claims against Moran and Zelaya as a "Third-Party Complaint." (*See* ECF No. 39.) However, a third-party complaint may only be served on "a nonparty who is or may liable to [a defendant] for all or part of the claims against it." *See* Fed. R. Civ. P. 14(a)(1). Ochoa does not allege that either Moran or Zelaya is potentially liable for any claim made against Ochoa by C&R. Rather, his Counterclaims allege that Moran and Zelaya may be personally liable for certain actions taken in their roles as owners of C&R. (*See* ECF No. 39 at 16–26.) Accordingly, the Court construes the claims against Moran and Zelaya as counterclaims and refers to all persons against whom Ochoa brings claims as Counter-Defendants in this memorandum. *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any question of law or fact common to all defendants will arise in the action.").

1

## I.   *Background*[2]

Ochoa alleges that C&R was formed as a "business providing caulking services as a subcontractor in and around the metro Washington, D.C. area" by Moran and Zelaya in January of 2019. (Counterclaims at 11, ECF No. 39.) In March of that year, Moran and Zelaya approached Ochoa and asked him to join C&R, agreeing that each of them would receive a salary of $26,000 and would be entitled to an equal split of C&R's profits (the "Profit Sharing Agreement"). (*Id.* at 11; 13.) Ochoa alleges that he accepted this offer and "performed as agreed" by providing services to C&R "including, but not limited to, project management and obtaining projects for C&R." (*Id.*)

In May 2019, Ochoa, Moran, and Zelaya attended a meeting with C&R's accountant, Joel Vasquez. (*Id.*) Ochoa alleges that the intent of this meeting was to memorialize the current ownership structure of C&R and the Profit Sharing Agreement through either amended Articles of Organization or a new Operating Agreement. (*Id.* at 11–12 n.2.) Ochoa was told that the revised agreement would be filed with the state of Maryland. (*Id.* at 12.) The documents were ultimately never filed because doing so would have interfered with Zelaya's ability to obtain a contractor's license in Virginia. (*Id.*) Moran and Zelaya did not inform Ochoa that they had directed C&R's accountant not to file the documentation memorializing the Profit Sharing Agreement. (*Id.*)

Ochoa continued to provide services to C&R following the meeting with Vasquez, including purchasing two trucks for use by the company and working on several projects in Washington, D.C. and Virginia (the "Disputed Projects"). (*Id.* at 13–14.) Ochoa alleges that his share of the profits for the Disputed Projects was $119,000, and that he was never paid for this

---

[2] The facts in this section are taken from Ochoa's pleading styled as a Counterclaim and Third-Party Claim and construed in his favor as the non-movant. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Ochoa's claims are largely independent of those made against him by C&R which are described in the Court's prior memorandum addressing Ochoa's Motion to Dismiss and C&R's Motion to Dismiss an interpleader claim made by former Defendant Bank of America, N.A. (*See* ECF No. 34.)

2

work by the Counter-Defendants. (*Id.* at 14–15.) Ochoa alleges that instead, Moran and Zelaya "claim[ed], among other things, that Mr. Ochoa was fully compensated, that he was never an owner, and was never entitled to any profit sharing [but] was instead simply an employee that C&R terminated." (*Id.* at 15.)

In March 2021, C&R sued Ochoa, alleging that he had withdrawn $95,000 from C&R's business account without permission. (*See* ECF No. 15 ¶ 11.) Ochoa disputes this claim, alleging that he was an authorized signatory and was listed as an owner of C&R on the account. (Counterclaims at 14.) Ochoa also filed the presently pending counterclaims seeking compensation for his work on the Disputed Projects.

## *II.   Legal Standard*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-plead allegations and view the complaint in the light most favorable to the [non-movant]." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [counter-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Id.* at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

Claims alleging fraud are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Under this Rule, "[i]n alleging fraud or mistake, a party must state

3

with particularity the circumstances constituting fraud or mistake." Those circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

### III. Analysis

Ochoa's Counterclaims seek repayment of the money he is allegedly owed for the Disputed Projects under a number of alternative legal theories. Specifically, he brings claims for (1) breach of contract against Zelaya and Moran or, alternatively, C&R; (2) fraudulent misrepresentation and fraudulent inducement against Zelaya and Moran; (3) unjust enrichment against all Counter-Defendants; and (4) violation of Maryland and Washington, D.C. wage payment laws against all Counter-Defendants. (Counterclaims at 16–26.) At this stage of the litigation, all but one of these alternative theories (the wage payment law claims) is sufficiently plausible to state a claim. Both sides, however, seek to litigate these claims by supplementing or contradicting Ochoa's allegations with documentary evidence. (*See id.* at 13 (attaching and relying on copies of a purchase agreement); Mot. Dismiss Counterclaims Mem. Supp. at 8 (relying on affidavits by Moran and Zelaya), ECF No. 43.) Thus, the Court must preliminarily address to what extent these documents should inform the Motion to Dismiss analysis.

### A. Consideration of Matters Outside the Pleadings

Generally, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the mere submission of extra-pleading materials does not require conversion, as the Court retains "complete discretion to determine

4

whether [ ] to accept the submission of any material beyond the pleadings . . . or to reject it, or simply not consider it." *MedSense, LLC v. Univ. Sys. of Md.*, 420 F. Supp. 3d 382, 390 (D. Md. 2019) (citation omitted). This discretion should be exercised by considering whether "the extraneous material is likely to facilitate the disposition of the action" or "whether discovery prior to utilization of the summary judgment procedure is necessary." *Id.* (internal quotations marks and citation omitted). Courts will generally decline to consider extra-pleading material where it is "scanty, incomplete, or inconclusive." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2021) (hereinafter "Wright & Miller").

Here, neither party explicitly requests conversion under Rule 12(d). (*But see* Mot. Dismiss Counterclaims Mem. Supp. at 2–3 (providing legal standard for summary judgment).) There is also no suggestion that the "extra-pleading material is comprehensive" with respect to the matters under consideration. Wright & Miller § 1366. Given that the proffered materials do little to supplement the pleadings and therefore would not "facilitate the disposition of the action," the Court will decline to consider them and will instead focus only on whether the allegations in the Counterclaims satisfy the standard set by Federal Rule of Civil Procedure 12(b)(6).[3]

### B. *Failure to State a Claim*

Counter-Defendants have filed a single, joint Motion to Dismiss wherein they argue that Ochoa has failed to successfully state any counterclaims. (*See generally* Mot. Dismiss Counterclaims Mem. Supp.) A review of Counter-Defendant's contentions confirms that most of

---

[3] Neither party suggests that the documents they rely on falls within the narrow exception for documents that can be considered *without* converting a motion to dismiss into one for summary judgment. This exception allows courts to consider a document in "determining whether to dismiss the complaint if [the document] was integral to and explicitly relied on in the complaint and if the plaintiffs to not challenges its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted). Clearly none of the documents fall within this narrow exception, which is reserved for any document that "by its very existence, and *not the mere information it contains*, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Am. Chiropractic Ass'n*, 367 F.3d at 234) (emphasis in original).

5

the proffered grounds for dismissal are inapt or, at best, premature disputes about the factual veracity of Ochoa's allegations. Counter-Defendants do correctly point out, however, that Ochoa has failed to plead sufficient facts that he was plausibly an employee of C&R within the meaning of the Maryland and Washington, D.C. wage payment statutes. Accordingly, those claims will be dismissed. The Motion to Dismiss will be denied in all other respects.

### 1. *Breach of the Profit Sharing Agreement*

Counter-Defendants argue that Ochoa's claim for breach of the Profit Sharing Agreement fails for three reasons: (1) Ochoa's allegations fail to establish the elements of contract formation, (2) that the Moran and Zelaya affidavits show that there was no Profit Sharing Agreement, and (3) that Ochoa's allegations do not substantiate an implied partnership. None of these arguments are availing at this stage of the litigation.

First, Counter-Defendants argue that Ochoa's allegations fail to establish the elements of contract formation, i.e. "an offer by one party and acceptance by the other party." *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007). They aver that Ochoa's pleadings only establish that the Profit Sharing Agreement "was contingent upon a written document—which [Ochoa] admits he does not possess or even exists." (Mot. Dismiss Counterclaims Mem. Supp. at 7.) This argument misstates the pleadings, which explicitly state that Counter-Defendants offered the Profit Sharing Agreement and Ochoa accepted that offer. (Counterclaims at 11.) Although this alone may be sufficient to plead formation of a contract, Ochoa further alleges that the Profit Sharing Agreement was in fact memorialized at the meeting with Vasquez. (*Id.* at 12 ("The documentation [effectuating the Profit Sharing Agreement] was executed by all parties but was not provided to Mr. Ochoa and was provided to the accountant for filing with the State.").) These allegations are certainly sufficient to plead offer and acceptance of the Profit Sharing Agreement. *Cf. Dolan v.*

*McQuaide*, 79 A.3d 394, 400 (D. Md. 2013) (finding no contract was formed where "parties spoke only in general terms about what [plaintiff] would do in exchange for a share in the business").

Second, Counter-Defendants' dispute what the facts in this case will ultimately show. They state that "[c]ontrary to the assertion by Ochoa that the parties had executed the purported Profit Sharing Agreement, Affidavits from Moran and Zelaya (Ex. 1, Ex. 2) establish that no such agreement was ever executed." (Mot. Dismiss Counterclaims Mem. Supp. at 8.) Given that the Court has declined to convert the pending Motion into one for summary judgment, this sort of evidentiary dispute is premature and cannot defeat the well-plead allegations supporting Ochoa's Counterclaims. *See O'Donnell v. Biolife Plasma Servs., L.P.*, 384 F. Supp. 2d 971, 973 (S.D.W. Va. 2005) (internal quotation marks omitted) (citing *Repub. Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) ("A Rule 12(b)(6) motion tests the sufficiency of the pleading. It does not resolve factual disputes, the merits of a claim, or the applicability of defenses.").

Third, Counter-Defendants' final argument, while more challenging to parse, appears to suggest that this case is analogous to *MAS Assocs., LLC v. Korotki*, 214 A.3d 1076 (Md. 2019). In *Korotki*, the trial court concluded that "there could be no breach [of contract] because there was no contract." *Id.* at 1085. Despite the lack of contract, however, the trial court determined that defendants could be liable because their conduct established an implied partnership. *Id.* In reversing the trial court, the Maryland Court of Appeals explained that "[i]n the absence of formal agreement, the existence of a partnership depends on the intent of the purported partners" and concluded that the evidence adduced at trial did not establish an intent to form an implied partnership. *Id.* at 476, 494 (internal quotation marks and citation omitted).

*Korotki* is inapposite here because Ochoa is not relying on a theory of *implied* partnership between himself, Zelaya and Moran. Rather, he is alleging that the three of them expressly agreed

7

to the Profit Sharing Agreement and that this agreement was memorialized, though not filed with the State of Maryland. (*See* Counterclaims at 11–12.) That the Profit Sharing Agreement created a partnership (meaning that Moran and Zelaya may be personally liable for its breach) is not foreclosed, as Counter-Defendants suggest, solely by the fact that C&R was an LLC. As *Korotki* explains, while "an LLC, itself, cannot simultaneously be a partnership . . . that is not the overarching issue here. It is possible to construct a circumstance in which the existence of a partnership and an LLC are not mutually exclusive phenomena." *Korotki*, 214 A.3d at 1088. Thus, the reasoning of *Korotki* does not foreclose Ochoa's claims with respect to breach of the Profit Sharing Agreement against any of the Counter-Defendants.

### 2. *Fraudulent Misrepresentation and Fraudulent Inducement*

Fraudulent misrepresentation and fraudulent inducement are materially identical torts under Maryland law. To prove either, a plaintiff must show, by clear and convincing evidence,

> "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to it truth, (3) that the misrepresentation was made for the purpose of defrauding, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc.*, 639 A.2d 660, 668 (Md. 1994); *see also Dynacorp Ltd. v. Aramtel Ltd*, 56 A.3d 631, 660 (Md. Ct. Spec. App. 2012) (providing same elements for fraudulent inducement claim). Ochoa alleges that Moran and Zelaya committed fraud by advising Ochoa that he was an owner entitled to a share of the profits in C&R while failing to disclose that they had no intention of formalizing or following through with the Profit Sharing Agreement. (*See* Opp'n to Mot. Dismiss Counterclaims at 10, ECF No. 46.) Ochoa further alleges that the purpose of misrepresenting his status in C&R was to ensure that he performed services for C&R and invested in the company by purchasing two trucks. (*Id.*; *see also* Counterclaims at 18–19.)

Counter-Defendants rejoin that these allegations are insufficient to state a claim of fraud for two reasons. Principally, they argue that Ochoa's claim that he was defrauded into believing that he was a partner in C&R fails because Ochoa alleges that Moran and Zelaya's decision not to file the paperwork was driven by the fact that filing the paperwork "would interfere with Zelaya's ability to obtain his contractor's license." (Mot. Dismiss Counterclaims Mem. Supp. at 10 (citing Counterclaims ¶ 51).) Although this is true, it is also irrelevant. Ochoa does not allege that Moran and Zelaya defrauded him merely by not filing the paperwork memorializing the Profit Sharing Agreement, but rather that Moran and Zelaya defrauded him by "carr[ying] on as though Mr. Ochoa was an owner and member of C&R." (Counterclaims at 18.) Thus, what Ochoa alleges was fraudulent is not the failure to *file* the Profit Sharing Agreement, but failure to *disclose* that the Profit Sharing Agreement had not been filed and would not be honored. These allegations plausibly state a claim based on fraudulent concealment which can include a "'situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away' from a material fact." *DiFranco v. Green Tomato, LLC*, App. No. 414223-V, 2018 WL 3202983, at *11 (Md. Ct. Spec. App. June 29, 2018) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007)).

Similar reasoning leads the Court to reject Counter-Defendants' challenge to the allegations of fraud resulting in Ochoa's purchase of the two trucks. (Counterclaims at 13.) Although Counter-Defendants argue that "Ochoa could have signed [the purchase agreement for the trucks] as a co-buyer without being a co-owner of the LLC[,]" this argument directly contradicts the allegations underlying this aspect of the fraudulent inducement claim. (Mot. Dismiss Counterclaims Mem. Supp. at 11.) There, Ochoa alleges that he purchased the trucks "[b]ased upon [Zelaya and Moran's] representations that Mr. Ochoa was an owner of C&R"

9

including their communications "to the Koons dealership that Mr. Ochoa was authorized as an owner of C&R to execute the purchase agreements on behalf of C&R." (Counterclaims at 13.) This is sufficient to allege that Ochoa purchased the trucks in reliance on the misrepresentation that he was an owner of C&R as set out in the Profit Sharing Agreement. Accordingly, Counter-Defendants' Motion to Dismiss Ochoa's fraudulent inducement and fraudulent misrepresentation claims will be denied.

### 3. *Unjust Enrichment*

Counter-Defendants' arguments for dismissal of Ochoa's unjust enrichment claim again rely on an unduly cramped reading of the allegations underlying the Counterclaims. To plead a claim for unjust enrichment, Ochoa must allege three things:

> (1) a benefit conferred upon the [Counter-Defendants]; (2) [a]n appreciation or knowledge by the [Counter-Defendants] of the benefit; and (3) [t]he acceptance or retention by the [Counter-Defendants] of the benefit under such circumstances as to make it inequitable for the [Counter-Defendant] to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, Inc.*, 936 A.2d 343, 351 (Md. 2007) (citation omitted). Counter-Defendants argue that Ochoa fails to establish the first element for unjust enrichment because "Ochoa does not allege that he performed any work related to the 'unpaid projects' or otherwise contributed to them." (Mot. Dismiss Counterclaims Mem. Supp. at 11–12.) This argument again appears to reflect Counter-Defendants' preferred view of what they believe the evidence will show rather than the allegations made by Ochoa, which explicitly state that "Mr. Ochoa provided services to C&R and [Zelaya and Moran] for the Unpaid Projects as well as co-purchasing the Trucks." (Counterclaims at 21.) The argument that Ochoa has not plead that he conferred a benefit on the Counter-Defendants plainly fails at this stage of the litigation.

### 4. *State Wage Law Claims*

10

Ochoa's final two claims allege violations of Maryland Wage Payment and Collection Law ("MWPCL") and Washington, D.C. law on Payment and Collection of Wages ("DCPCW"). *See* Md. Code Ann. Lab. and Employment § 3-501, *et seq.*; D.C. Code Ann. § 32-1301, *et seq.* These claims are premised on the alternative view that Ochoa performed work for C&R not as a partner, but as an employee. (Counterclaims at 22, 24.) Counter-Defendants argue that both claims must fail because Ochoa is not an employee within the meaning of the relevant statutes. Although their reasoning is not perfectly clear, the gravamen of their argument appears to be that Ochoa has not sufficiently pleaded facts to establish that he is an employee rather than an independent contractor. (Mot. Dismiss Counterclaims Mem. Supp. at 14.) Because Ochoa has not plead facts sufficient to support his allegation that he is an employee within the meaning of the Maryland or Washington, DC statutes, these claims must be dismissed.

Independent contractors do not fall within the protections of either the MWPCL or the DCPCW. *See Balt. Harbor Charters, Ltd. v. Ayd*, 780 A.2d 303, 316 ("Where a statute applies to 'employees' but fails to provide a definition for the term 'employee,' the United States Supreme Court has recognized that this term may be interpreted in harmony with the common-law distinctions observed between the terms employees or agents, and those classified as independent contractors."); *Sanchez v. Magafan*, 892 A.2d 1130, 1134 (D.C. 2006) ("Sanchez was an independent contractor—hence not an 'employee' under the Wage Payment Act.").

In determining whether a person is an employee or an independent contractor, both Maryland and Washington, D.C. look to the same five factors for guidance. These factors relate to the employer's control over the putative employee including: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer."

11

*Balt. Harbor*, 780 A.2d at 316; *see also Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 423 (D.C. 2006) (enumerating same factors). Courts in both jurisdictions also emphasize that "the decisive test is whether the employer has *the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.*" *Shecter*, 892 A.2d at 423 (emphasis in original); *Injured Workers' Ins. Fund v. Orient Exp. Delivery Servs., Inc.*, 988 A.2d 1120, 1131–32 (Md. Ct. Spec. App. 2010) (internal quotation marks and citation omitted) ("We have said for example, that whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done is the decisive or controlling test.").

As an initial matter, the Court rejects Ochoa's contention that C&R's characterization of him as an employee in its Amended Complaint is dispositive on this issue. (*See* Opp'n Mot. Dismiss Counterclaims at 14 ("It is only the Counter-Defendants who have definitively claimed that Mr. Ochoa was an employee.").) In assessing whether a worker is an employee or an independent contractor, both Maryland and Washington, D.C. courts have "advise[d] courts to avoid elevating form over substance[,]" *Injured Workers'*, 988 A.2d at 1132, and to look to "the actual relationship the parties . . . notwithstanding the terminology used." *Schecter*, 892 A.2d at 423. Thus, while C&R's contention that Ochoa is an employee indicates that he could *potentially* plead claims under the MWPCL and DCPCW, the onus remains on Ochoa to plead sufficient facts plausibly establishing that he was an employee based on the manner in which he carried out his work for C&R.

Ochoa has not done so in his current pleadings because he has not sufficiently pleaded facts suggesting that Moran or Zelaya (or anyone else at C&R) exercised sufficient control over his work for him to be considered an employee. In *Lemon*, the Fourth Circuit concluded that plaintiff,

a law firm partner, was not an "employee" within the meaning of Title VII. *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 397 (4th Cir. 2021). Among the principal factors that supported this conclusion were that "[n]o one owned a greater share of the firm, or had greater voting power" than the plaintiff, that plaintiff's "annual compensation was tied to the performance of the firm and her contribution to it[,]" and that plaintiff "enjoyed a high degree of independence in discharging her duties as a partner." *Id.* These factors are also present in the employment relationship outlined in Ochoa's Counterclaims. (*See* Counterclaims at 11, 15 n.4.) Although Ochoa describes the applicability of *Lemon*, a Title VII case, to the MWPCL and DCPCW as "dubious at best," (Opp'n Mot. Dismiss Counterclaims at 16), the analysis under all three statutes is driven by the same "principal guidepost[,] . . . the common-law element of control." *Lemon*, 985 F.3d at 396; *Balt. Harbor*, 780 A.2d at 316 ("[T]he test for determining the existence of an employer and employee relationship under the [MWPCL] is the same as the common law rules for ascertaining the relation of master and servant.").

Ochoa is also correct that whether he was "an owner of C&R such that no one was higher than him an [sic] had no higher responsibility than him" is contested in this lawsuit, (Opp'n Mot. Dismiss Counterclaims at 16), but he fails to allege how Moran and Zelaya's ostensibly superior position within C&R translated to their exercise of control over him or his responsibilities. Indeed, his allegation is that, during the time he worked for C&R, Moran and Zelaya "carried on as though Mr. Ochoa was an owner and member of C&R." (Counterclaims at 18.) Further, Ochoa alleges that his responsibilities with C&R primarily involved "project management and obtaining projects for C&R" (Counterclaims at 11), duties that seem unlikely to have been subject to strict supervision. *Cf. Lemon*, 983 F.3d at 397 (finding that "high degree of independence in discharging [ ] duties" and that supervision was limited to "assur[ing] quality control and provid[ing] feedback"

favored finding that a partner was not an employee). Nowhere does Ochoa rebut the reasonable inference created by his allegations that his responsibilities were those of a partner, rather than an employee, by alleging that he performed these duties subject to supervision or control by anyone at C&R.

Rather, the relationship sketched out by Ochoa's allegations suggest that he was "customarily working in his own interest, albeit also being beneficial to [C&R]." *Balt. Harbor*, 780 A.2d at 319. In light of this, other indicia of employee status, such as the fact that "Ochoa was paid a salary" (Opp'n Mot. Dismiss Counterclaims at 16), cannot overcome Ochoa's allegations that he performed his work for C&R as though he were an owner and with significant independence. Absent more precise allegations as to how Moran and Zelaya exercised (or at least could have exercised) control over Ochoa's work at C&R, these factors remain the "controlling or decisive" ones. *Injured Workers'*, 988 A.2d at 1132. Although Ochoa's argument that he was an employee is conceivable, his sparse pleadings regarding the nature of his work do not provide enough "factual allegations . . . to nudge [his] claims across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotation marks and citation omitted).

To summarize, Ochoa has adequately plead that he performed work on the Unpaid Projects and that he was not paid for that work. Assuming these two facts bear out, he is likely entitled to some form of compensation. Other factual developments will determine whether that compensation is for breach of the Profit Sharing Agreement, unjust enrichment, and/or fraudulent inducement. The claims seeking compensation under these theories, Counts I-IV, are adequately plead. However, Ochoa's Counterclaims fail to allege any set of facts under which Ochoa's work was performed as an employee within the meaning of state wage payment laws. Accordingly,

Counts V and VI, which provide statutory remedies only to common-law employees, must be dismissed.

### IV. Conclusion

For the foregoing reasons, an Order shall issue granting in part and denying in part the Counter-Defendants' Motion to Dismiss Ochoa's Counterclaims. (ECF No. 43).

DATED this ___1___ day of March, 2022.

BY THE COURT:

_____
James K. Bredar
Chief Judge